# CIRCUIT COURT OF BALTIMORE CITY.

Filed July 14, 1908.

STEVENS THOMSON MASON, COMMITTEE AND TRUSTEE,

VS.

MARION I. TURTLE ET AL.

---

*Cadwalader & Whitman* for Frank H. Pardon et al.

*Willis & Homer* for Marion R. Turtle.

*L. B. Keene Claggett* for Cora M. Chase and Stevens Thomson Mason.

ELLIOTT, J.—

The contention in this cause is as to the construction and effect which are to be given to the will of the late Martha F. Mason. The clause in controversy is brief, and may be quoted at length, as follows: "I give and bequeath to my son, Thomas Mason, all my property, real, personal and mixed. In the event of my son, Thomas Mason's death, (and leaving no child), I bequeath it all to my sister, Marion Luckett McCobb and her children."

The will was executed on August 7, 1871, and the testatrix died April 15, 1873, at which later date the said Thomas Mason was living, and continued to live until May 15, 1906, on which date he died "leaving no child," he never having married.

At the time of his death the said Thomas Mason was a declared lunatic, such declaration having been made as

the result of an inquisition had at the instance of his mother, four months previous to the execution of her will, and two years and more previous to her decease, she being at the time his committee.

The committeeship created as above mentioned continued until the death of the said Thomas Mason, and the object of the present suit is to determine to whom the estate left by the said testatrix passed at his death, whether to his heirs at law and next of kin, or to the heirs at law and next of kin of Marion Luckett McCobb, sister of the testatrix, to whom it was to go under certain circumstances.

During the argument, the court has been referred to a number of decisions which illustrate the application of certain technical rules which have been applied in cases where the construction of a will was made necessary, but the present does not appear to call for a discussion of such rules, and for a very plain reason, which may be stated in a very few words.

Technical rules of construction are never to be resorted to except in cases of ambiguity, or where, to give effect to the apparent meaning, would be to violate some positive rule of law, whether provided by statute or adopted by a line of judicial decisions. It is needless to affirm that whenever the intention of a testator is possible of discovery, it should be made effective, unless to do so would be to violate the law.

Our duty, therefore, is to put ourselves in the position of the testatrix, if possible, and to discover her intention, and it is with a view of doing this, that I have stated the facts existing at the date of the will, and also at the death of the testatrix.

There was every consideration moving the testatrix to regard her son as specially deserving of her solicitude and bounty. He needed and required her assistance, and it was from her estate, while she lived, or after her death, that he was to get his support.

He was, therefore, her first concern, and so we find her leaving him "all my property, real, personal and mixed," and there can be no question that unless this devise and bequest to him is subsequently qualified as to quantity, then upon the taking effect of the will, with him still living, there passed to

him at that time an absolute estate, which passed at his death, intestate, or under his will, if he had one, as if it had never belonged to the testatrix.

There was, however, a subsequent provision in the mother's will which may here be repeated. "In the event of my son, Thomas Mason's death (leaving no child), I bequeath it all to my sister, Marion Luckett McCobb, and her children."

Did this provision qualify the estate left to Thomas Mason? In other words, would he have taken any other or different estate if that provision had not been made, from that which he took in accordance with it? I think not.

In the first place it was the very same estate which he would have taken, if living, that would have passed to the sister of the testatrix if he had died, leaving no child, because in the one case he was to have "All my property, real, personal and mixed," and in the other "it all," was to go to the sister and her children. It was therefore, not successive or different interests that were to go, in one instance, to the son, and, in the other to the sister, but the same which were to pass in the alternative.

In the next place it was not only the same property, but the same property in the same condition, that was to pass alternatively, "All my property," and "it all," were the terms used.

In the third place, there were no express terms of defeasance. The property did not go first to the son, and then pass to the others, upon his death, leaving no child.

But the very same estate in the very same property was to go to the son, if living, and to the sister, if instead of being alive, he were then dead, leaving no child.

And so it happens that the important question in the case is what was the exact point of time, surviving which, the son took, and in the event of his dying before which, without children, the sister took?

It might well seem sufficient to say that there could be but a single point of time when the property passing to the one, or the other, could be the same, because it was the same which had been left by the testatrix, and that was before it had been enjoyed by either of the alternative devisees, name-

ly that of the death of the testatrix. And so it seems clear that the question of survivorship, and the question of taking, must be decided as of the time of the death of the testatrix, so that if the son survived that period, he took absolutely, while if he were then dead, leaving no child, the sister took absolutely.

But there is even a stronger reason for selecting that point of survivorship.

No one can read the will without seeing that the sister was to take only in the case neither the son, nor any child of his, was alive to take, and in the order of taking, was first the son, second a child of his, third the sister, and no two of these took simultaneously. The scheme of the will was first a taking by the son, and next to him, his child, though there is no direct gift to such child and its taking must be through the father. So that before the child could take, the father must have taken. And when the testatrix contemplated, as she evidently did, a taking by a child of the son, he having died, she must evidently have had in mind such a taking by the son as would have passed to his child, at his death, not by virtue of a devise in the will, but by substitution, the same estate as he would have taken, had he then been alive. She may well be taken as knowing that such is the law in Maryland, and that, without any express devise to the child contained in the will.

And so this will is to be construed as intending an absolute taking by the son in the case he survived his mother, the testatrix; a taking by his child, if he were then dead, leaving a child, and a taking by the sister only in case the son predeceased his mother, leaving no child.

So I am clearly of the opinion that immediately upon the death of his mother, and the taking effect of her will, Thomas Mason, surviving his mother, took all the estate, absolutely, and that upon his death it passed to his heirs-at-law and next of kin.

It follows, therefore, that the complainants in the bill filed herein on April 10, 1907, must prevail in their contention that the estate of Martha F. Mason passed to them, and not to the respondents.

A decree will be signed accordingly.